UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BONNIE K. BOLF,

       Plaintiff,                        CIVIL ACTION NO. 2:07-10358

vs.

                                      DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 13) be DENIED, that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED, and that the case be REMANDED for further proceedings consistent with this Report.

***

Plaintiff protectively filed an application for Disability and Disability Insurance Benefits on September 8, 2003, alleging that she had been disabled and unable to work since February 14, 2003 due to a back injury. (TR 17, 49, 188). The Social Security Administration denied benefits. (TR 24). A requested *de novo* hearing was held on June 30, 2005 before Administrative Law Judge (ALJ) Michael E. Finnie who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability at any time through the date of the March 31, 2006 decision. (TR 21-22). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 4). The parties

filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was fifty-three years old at the time of the administrative hearing, completed an associates degree and worked as a radiographer/mammographer for twelve years, from 1991 to February 2003. (TR 66, 190, 191, 192). Plaintiff has not engaged in any substantial gainful activity since February 2003. (TR 192). Plaintiff alleges that she is not able to do the required bending and lifting of her prior job according to her doctor's restrictions following back surgery on February 14, 2003. (TR 74).

Plaintiff testified that she has lower back pain and radiating pain from her back down her legs. (TR 193). The problems with her back started around 1993 or 1994. (TR 193). In 2002 she had an accident in which she fell over a hill while on a riding lawn mower. (TR 192). Plaintiff alleges that the accident resulted in a fracture in her back and increased her back problems. (TR 194). Plaintiff underwent a decompression and fusion surgery on February 14, 2003. (TR 194). Prior to the surgery Plaintiff underwent physical therapy. (TR 194). Plaintiff testified that initially she thought that the surgery was helpful, but the pain returned "down both legs." (TR 194-95).

Plaintiff testified that on a scale of one to ten, her back pain is between six and seven on an average basis. (TR 195). Plaintiff takes Vicodin at night for her back pain. (TR 195, 197). Standing for an extended period aggravates her back and she avoids bending and stoops or squats instead. (TR 195, 197, 216). She does not lift heavy objects. (TR 196). She testified that the doctor gave her a twenty to twenty-five pound weight restriction, but she states that there is "no way" she can lift that much. (TR 196). Her husband assists her with laundry and he lifts the heavy laundry like jeans and towels. (TR 84, 86, 212). Plaintiff continues to garden, but testified that she weeds

with a long hoe and takes breaks to sit down; in the past she was able to weed all the flower beds at one time and she cannot do that anymore. (TR 86, 213). She cannot do heavy house cleaning, like moving furniture to vacuum, and she cannot lift or carry her 2 ½ year old grandchild. (TR 214). Reaching over her head bothers her. (TR 215). She uses a "grabber" to reach for light weight items, but if the item is heavy, she must have her husband get it down. (TR 88, 216).

Plaintiff testified that she enjoys walking and feels very lucky to be able to walk. (TR 193). She can only do tasks for a half hour before she has to sit down or lie down for approximately ten to thirty minutes to relieve her discomfort. (TR 193, 211). She testified that she lies down between four and six times per day depending on how much activity she is doing. (TR 196, 211). Plaintiff has trouble sleeping and tosses and turns, and gets up and walks. (TR 84, 197). She gets approximately six hours of sleep per night but it is not continuous. (TR 197).

Plaintiff testified that physical therapy "does help." (TR 197). She had pain down both legs and with physical therapy it is intermittently in the left and right leg although it never completely goes away. (TR 197). Plaintiff testified that she has no other physical impairments that would impact her ability to work. (TR 198). Plaintiff can drive, but sitting during long car rides bothers her, so she stops approximately every hour to stretch her legs. (TR 86, 216). Plaintiff testified that in her position as a ultra sonographer and radiographer she had to do some patient lifting. (TR 192).

A state agency physician completed a residual functional capacity assessment for Plaintiff on December 10, 2003 and concluded Plaintiff is able to lift twenty pounds occasionally and ten pounds frequently. (TR 135, 142, 201). The physician also noted that "[c]ustomer allegations combined with medical evidence and ADL's appear to show customer mostly credible at this time although she is healing and progressing satisfactory (sic)." (TR 139). The ALJ gave Plaintiff an

opportunity to respond to this assessment at the hearing and Plaintiff disagreed with the weight assessment. (TR 198). She has difficulty lifting her fabric softener while doing laundry and she estimates it is about the size of a gallon of milk, approximately five to eight pounds. (TR 200). She testified that she can most likely lift ten pounds or less. (TR 200). She testified that she cannot lift twenty to twenty five pounds on a repetitive basis because when she removes a gallon of milk from the refrigerator it pulls on her back and pain radiates down her leg. (TR 202).

Plaintiff also disagreed with the assessment that she could stand and walk for approximately six hours in an eight hour workday. (TR 135, 203). Plaintiff testified that she could stand or walk for two hours in a total day. (TR 203, 206). Plaintiff also testified that if she were working, she would miss approximately one day a week in a five day work week. (TR 207). Upon further questioning from the ALJ she agreed that she would probably miss three or four days a week. (TR 209). Plaintiff testified that she can stand in one position for five to ten minutes, sit in one position for approximately fifteen minutes and walk approximately 1/16th of a mile before her pain increases and she must rest or shift position. (TR 210).

**Medical Record**

On July 30, 2002 Plaintiff went to the emergency room after a lawn mower she was riding rolled down a hill and landed on her pelvis and low back. (TR 117). She complained of severe pain in the right flank and right lower lumbar area. (TR 117). Her x-rays were negative of the lumbosacral spine, cervical spine and right hip. (TR 117). On September 17, 2002 Plaintiff underwent an MRI of the lumbar spine, which revealed "acute compression fracture through superior end plate of T12 vertebral body on left side with associated bone marrow edema." (TR 116, 129). There was no compression or contusion of the distal spinal cord or cauda equina. (TR 116).

Deepak Agarwal, M.D. further noted bilateral spondylolysis at L5 with Grade I spondylolisthesis of L5 over S1. (TR 116). On October 19, 2002 Plaintiff had a CT scan of the thoracolumbar spine from the level of T12 to L1. (TR 115). Sultan Bhimani, M.D. noted compression of the body of T12 in the superior aspect which could represent "some herniation of the nucleus pulposus inside the vertebral body" and may be post traumatic. (TR 115).

On October 17, 2002 E. Malcolm Field, M.D. noted that Plaintiff had diffuse back pain. (TR 121). Upon examination he noted that "with extension of the spine abduction, Plaintiff has "severe exquisite pain in her lower back with a lot of paravertebral muscles spasm." (TR 121). On October 31, 2002 Dr. Akbar noted that Plaintiff complained of back pain. Plaintiff reported that she was taking 2-2 ½ Vicodin per day. (TR 129). Straight leg raising was satisfactory bilaterally with satisfactory range of motion of her hips. (TR 129). X-rays revealed that the compression fracture at T12 had overall healed and aligned satisfactorily and there was evidence of minimal degenerative disc disease. (TR 129).

On November 12, 2002, Dr. Field noted that Plaintiff was "complaining of a lot of back pain." (TR 120). On December 2, 2002 Dr. Akbar noted that Plaintiff again reported back and leg pain with more pain on the left side. (TR 127). She reported that increased activity increases her discomfort and that she has had an increase in symptoms with physical therapy. (TR 127). Plaintiff reported that "she is living on Vicodin and cannot continue the way she is anymore." (TR 128). They discussed the pros and cons of treating her condition with or without surgery. (TR 127). On December 4, 2002 Dr. Akbar provided a Certificate for Return to Work limiting Plaintiff to working four hours per day. (TR 131).

Plaintiff underwent a decompressive lumbar laminectomy and a spinal fusion on February 14, 2003 performed by Dr. Field and Dr. Akbar, respectively. (TR 104, 107). In the Preadmission History and Physical Examination Dr. Field noted that Plaintiff was taking medications Premarin, Vicodin, Imitrex and Calcium. (TR 113). Upon examination he noted that Plaintiff had marked restriction of spine motion, no palpable deformity or focal tenderness at the L1 level, had evidence of restricted abduction and extension of the spine in the lower lumbar area, heel and toe walking caused discomfort and straight leg raising caused pain and discomfort in the lower portion of the back. (TR 114).

Plaintiff's preoperative and postoperative diagnoses were noted as spondylolisthesis L5-S1 with bilateral radiculopathy and instability and symptomatic L5-S1 spondylolisthesis. (TR 107-110). On February 15, 2003 Dr. Akbar noted that Plaintiff felt that the surgery had helped and her legs did not bother her. (TR 106). The pain was satisfactorily controlled and she was out of bed and ambulating. (TR 106). Plaintiff was stable and making satisfactory progress. (TR 106). On February 18, 2003 Dr. Field noted that Plaintiff was up and ambulating well, independent in her transfers and activities and wearing the lumbosacral corset. (TR 104, 105). Plaintiff was prescribed Darvocet for pain and was discharged the same day. (TR 104, 105). Her maximum lifting restriction was five pounds. (TR 104). Dr. Akbar noted that she indicated that her pain was mainly in her hip area and her lower extremities were not bothering her**.** (TR 105).

On March 20, 2003 Dr. Field noted that Plaintiff had "no gait disturbance and the rest of the evaluation . . . was within normal limits." (TR 119). On April 7, 2003 Dr. Akbar examined Plaintiff's complaint of right-sided groin discomfort. (TR 126). Dr. Akbar noted that Plaintiff reported having good days and bad days, that the pain had "settled down" and her legs did not bother

her. (TR 126). She reported taking an occasional Darvocet for pain, mainly at night, and walking up to 2 ½ miles per day. (TR 126). Similarly, in the Function Report dated November 7, 2003 Plaintiff reported walking 1 ½ to 2 miles before she must stop and rest. (TR 89). On July 21, 2003 Dr. Akbar noted that Plaintiff reported walking up to 2 ½-3 miles per day and her pain was decreasing. (TR 125). He noted that she was "healing satisfactorily." (TR 125). On September 4, 2003 Dr. Akbar permanently restricted Plaintiff to lifting a maximum of twenty to twenty-five pounds, no climbing ladders, limited bending and twisting at the waist and sitting and standing as needed. (TR 123). September 29, 2003 x-rays revealed bilateral/lateral fusion L4 to L5 and L5 to sacrum with L5/S1 Grade I spondylo with right-sided scoliosis. (TR 122). Dr. Akbar noted that the fusion healed well bilaterally. (TR 122).

From June 12, 2003 through March 29, 2004 Plaintiff was treated by Michael A. Butman, M.D. for general health complaints and routine examinations. (TR 143). Plaintiff saw Dr. Butman approximately nine times during this period and on several occasions complained of back pain. (TR 143-59). On March 29, 2004 Dr. Butman referred Plaintiff to Michigan Spine Care for evaluation and further recommendations. (TR 156). Plaintiff obtained services through Michigan Spine Care from April 19, 2004 through June 18, 2004. (TR 160-180). Paul LaClair, M.D. examined Plaintiff on April 19, 2004. (TR 176). He noted that Plaintiff has a significant decrease in truncal flexion and extension, straight leg raise was negative bilaterally and Fabere test was positive bilaterally. (TR 176). He noted some "tenderness to palpation over the right, greater than the left, sacroiliac joints and over the lumbosacral junction." (TR 176). He concluded that Plaintiff has low back pain and leg pain in the setting of an L5-S1 spondylolisthesis status-post lumbar fusion and that she appears to have some sacroiliac joint mediated pain. (TR 176). Dr. LaClair ordered lumbar lateral

flexion and extension x-rays and physical therapy for core stabilization. (TR 177). The x-rays revealed the prior fusion from the area of L4 to S1, slight anterior displacement of L5 regarding S1 consistent with spondylolisthesis and advanced narrowing of the L5-S1 interspace. (TR 178). No acute findings were identified and he noted "anatomic relationships maintained." (TR 178). On May 20, 2004 Dr. LaClair noted that Plaintiff had been participating in physical therapy and was making progress with stabilization. (TR 175). She continued to have some pelvic malalignment issues but her reliance on a sacroiliac belt was diminishing as her muscular strength improved. (TR 175). Plaintiff's Vicodin use decreased from six nights per week to four to five nights per week. (TR 175). Dr. LaClair reported that Plaintiff believed her left leg pain had markedly improved. (TR 175).

Plaintiff underwent physical therapy from April 22, 2004 through June 18, 2004. (TR 160-63). On April 22, 2004 the physical therapist noted decreased range of motion, strength and mobility, pelvic/sacral and vertebral asymmetry and functional limitations in sitting. (TR 163). The therapist further noted no inconsistencies or embellishments by Plaintiff. (TR 163). On May 10, 2004, after seven therapy sessions, the physical therapist noted Plaintiff was compliant in her home exercise program and had significantly improved active lumbar flexion and extension. (TR 162). On May 20, 2004 it was noted that Plaintiff demonstrated improved lower extremity strength. (TR 161). The therapist recommended that she discontinue using the sacroiliac belt due to lack of efficacy. (TR 161). Plaintiff was discharged on June 18, 2004 after attending 22 sessions of physical therapy. (TR 160). The therapist noted that she "has made significant gains in physical therapy" and that she is independent and compliant with her home exercise program and would continue to see further gains in stability. (TR 160).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff met the disability insured status requirements, had not engaged in substantial gainful activity since her February 14, 2003 onset date, and suffered from degenerative disc disease of the lumbar spine (status-post fusion), a severe impairment, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 19). Additionally, the ALJ found Plaintiff's testimony was not totally credible and she had the residual functional capacity to perform her past relevant work as a radiographer as that work is generally done. (TR 21). Therefore she was not suffering from a disability under the Social Security Act. (TR 21-22).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *Id*. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding

"supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). The issue is whether the ALJ's step four finding is supported by substantial evidence.

Plaintiff argues that the decision of the ALJ is not supported by substantial evidence because the ALJ distinguished Plaintiff's past relevant work "as the work is generally done" instead of "as the claimant performed the work." Further, Plaintiff contends that there is no substantial evidence to support the ALJ's decision to discount plaintiff's credibility. (Pl.'s Br. At 5-7). For the following reasons, the Court finds that the decision of the ALJ was not supported by substantial evidence.

***Whether the ALJ Erred in Distinguishing Plaintiff's Past Relevant Work "As The Work Is Generally Done."***

Plaintiff's first argument is that the ALJ's determination that Plaintiff has the RFC to perform her past relevant work "as that work is generally done" was not supported by substantial evidence in the record because the radiographer job "as claimant performed the work" was "heavy and skilled." (TR 21).

The relevant inquiry is whether Plaintiff can return to her past *type* of work, not just her former job. *See Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (The plaintiff's argument rested on "the incorrect assumption that his burden is to show merely an inability to return to his old job . . . . This view rests on too narrow a construction of the standard of eligibility for benefits.").

The Vocational Expert (VE) testified at the hearing that Plaintiff's past work as a "radiographer" is no. 078.362-026 in the Dictionary of Occupational Titles ("DOT") and is classified as "light and skilled." (TR 218). Her second title, "ultrasound technologist" DOT no. 078.364-010,

is also classified as "light and skilled." (TR 218). The VE testified that by Plaintiff's experience both titles were performed at the "heavy" classification. (TR 218).

***Whether the ALJ's RFC is Supported by Substantial Evidence***

The ALJ determined that Plaintiff has the RFC to "to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours of an eight-hour day; climb ramps and stairs, balance, kneel, and crouch occasionally; and do no bending, twisting, or climbing of ladders, ropes, or scaffolds." The ALJ concluded that Plaintiff "retains the functional capacity for a limited range of light work." "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Plaintiff testified she is not comfortable with being able to lift twenty pounds on an occasional basis and she can most likely lift ten pounds or less. (TR 200). However, Dr. Akbar gave her the following permanent back restrictions dated September 4, 2003: Twenty to twenty-five pounds maximum lifting, no ladders, limited bending and twisting at waist and sit and stand as needed. (TR 123). Dr. Akbar's restriction are incorporated in the ALJ's RFC. Similarly, the state agency physician reviewed the record and completed a Physical Residual Functional Capacity Assessment dated December 1, 2003 and concluded that Plaintiff has the following exertional limitations: Occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk (with normal breaks) about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and unlimited restriction as to pushing and/or pulling, including the operation of hand and foot controls. (TR 135). The state agency physician further noted that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes and scaffolding, balance, stoop, kneel, crouch and crawl. (TR 136).

With the exception of Plaintiff's testimony regarding her exertional limitations, pain and symptoms, the ALJ's RFC is supported by substantial evidence in the record, including Plaintiff's doctor's restrictions and the state agency physician's assessment. However, the Court must determine whether the ALJ's finding that Plaintiff's allegations are not entirely credible is supported by substantial evidence.

***Whether the ALJ's Credibility Determination is Supported by Substantial Evidence***

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to produce her alleged symptoms" but that "her statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." (TR 20). Plaintiff argues that the ALJ's decision to discount Plaintiff's credibility is not supported by substantial evidence.

The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of a witness. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1234 (6th Cir. 1993). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485-86 (1996) (SSR 96-7p). The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

61 Fed. Reg. 34483, 34485-86.

An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 61 Fed. Reg. 34483, 34486. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

The ALJ merely found that Plaintiff's "statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." This is not specific enough to show which of Plaintiff's allegations and statements the ALJ found to be less than credible, the weight given to those statements and the reasons for that weight. The Court cannot assume that the ALJ found that none of Plaintiff's allegations are credible.

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about

the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). There is no evidence in the ALJ's opinion that he considered these factors with respect to Plaintiff's specific statements. The credibility of Plaintiff's statements has significant ramifications. The VE testified that if Plaintiff's complaints were credited, then Plaintiff could not perform her past relevant work or any other competitive employment. (Tr. 220).

Based upon the foregoing, the Court concludes that substantial evidence does not support the ALJ's credibility assessment. Therefore, the case must be remanded so that the ALJ may conduct a re-assessment of Plaintiff's credibility, specifically citing to the facts that support his or her determination including which of Plaintiff's claims are or are not credited and the evidentiary basis for his or her conclusions. Thereafter, the ALJ should: (1) specifically state whether Plaintiff's credible complaints affect his or her RFC finding and the reasons for those decisions; and (2) conduct a new step four analysis if otherwise appropriate and proceed to a step five analysis if necessary.

**RECOMMENDATION**

The Commissioner's decision is not supported by substantial evidence Defendant's Motion for Summary Judgment (docket no. 13) should be DENIED. Plaintiff's Motion for Summary Judgment (docket no. 8) should be DENIED. The case should be REMANDED back to the Commissioner for further proceedings consistent with this Report.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 31, 2008            s/ Mona K. Majzoub
                                                    MONA K. MAJZOUB
                                                    UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 31, 2008            s/ Lisa C. Bartlett
                                   Courtroom Deputy